# City of Seattle
## CLAIM FOR DAMAGES

Note: Type or Print Legibly. See instructions on back.

**CITY USE ONLY**
CLAIM NUMBER
DATE FILED

**CLAIMANT**
NAME (FIRST – MIDDLE – LAST, OR BUSINESS NAME): Mary Celeste Park
DATE OF BIRTH: 3/9/1958
HOME PHONE: (206) 935-6160
CURRENT HOME ADDRESS: 3416 61st Ave. SW, Seattle, WA 98116
BUS. PHONE: None
HOME ADDRESS AT THE TIME THE CLAIM AROSE: (Same as above)
CELL PHONE: (206) 209-6707
E-MAIL ADDRESS: carolandtom3032@comcast.net

**ACCIDENT/LOSS**
DATE: On or about August 22, 2012
TIME: 

**LOCATION/SITE** (BE VERY SPECIFIC: STREETS, ADDRESSES, etc.):
Detective Litalien made defamatory per se statements with malice to the press, including but not limited to the Seattle P.I. and the UPI concerning Mary Park. See Exhibits 4 and 5.

**WHAT HAPPENED?**
Detective Elizabeth Litalien published false, malicious, defamatory per se statements to the press and others, without privilege, accusing Park of theft and abuse of Hermine Berner. Park refers to the claim filed with the City on on 8/15/2014 for additional facts about the illegal investigation and see attached Exibits.

DIAGRAM – Use if this will help you locate or describe what happened

**NAMES, ADDRESSES, AND PHONE NUMBERS OF ALL PERSONS INVOLVED IN OR WITNESS TO THIS INCIDENT***

1) Det. Elizabeth M. Litalien
Badge No. 6289
Seattle Police Department
Ph: (206) 625-5011

2) Casey McNerthney
SEATTLEPI.COM
2901 3rd Ave, Ste 120
Seattle, WA 98121
Ph: (206) 448-8030

3) United Press International
1133 19th St. N.W.
Washington, DC 20036
Ph: (202) 898-8000

CITY DEPT?
CITY EMPLOYEE
CITY VEHICLE NUMBER, LICENSE, etc.

* See attached Exhibit 2 for additional persons involved in or witnesses to this incident.

**WAS YOUR PROPERTY DAMAGED?** (i.e. Home, Auto, Personal Property)
☐ YES   ☒ NO

**WERE YOU INJURED?**
☒ YES   ☐ NO

DESCRIBE YOUR INJURY (IDENTIFY YOUR DOCTOR(S)): Pain and suffering, loss of reputation, shame, mortification, hurt feelings, emotional distress, costs and attorney fees. See attached Exhibit 3 for names of health care providers.

WAGE LOSS ☒ YES ☐ NO   IF YES, THEN RATE OF PAY: $20
KIND OF WORK: Caregiver (at time of incident)
EMPLOYER: Capco Liquer Store (presently)

**AMOUNT CLAIMED** $ 1,000,000

**SIGNATURE OF CLAIMANT** (AND TITLE, IF A BUSINESS)

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct

EXECUTED this 18th day of August, 2014,
At Seattle, King County, Washington

X [signature]
Mark J. Wilson, WSBA No. 16675 for Mary Park
500 Union Street, Suite 502, Seattle, WA 98101
Tel: (206) 567-9826; Fax: (206) 567-9827

This claim form must be signed by the Claimant, verifying the claim; or pursuant to a written power of attorney, by the attorney in fact for the claimant; or by an attorney admitted to practice in Washington State on the claimant's behalf; or by a court-approved guardian or guardian ad litem on behalf of the claimant.

# PRESENTATION OF A CLAIM

This official City of Seattle document must be signed, and mailed or delivered

| Mail to: | Deliver to: |
|---|---|
| CITY CLERK'S OFFICE | CITY HALL |
| PO BOX 94728 | 600 Fourth Avenue, 3rd Floor |
| Seattle, WA  98124-4728 | Between James St. & Cherry St. |
| | Business Hours: Monday-Friday, 8:00 AM-5:00 PM |
| | Closed on Weekends and Official City of Seattle Holidays |

An adjuster will be assigned to your claim after it is filed with the City Clerk's Office.  **It is to your advantage** to present with your claim relevant supporting documents (receipts, cancelled checks, estimates, billings, etc.) or additional evidence (photos, diagrams, etc.).  All documents are subject to the Washington State Public Disclosure Statutes.  Additional Claim forms can be downloaded from the Risk Management website.  (http://www.seattle.gov/riskmanagement)

## EXPLANATION OF THE CLAIMS PROCESS

The day after your Claim is filed in the City Clerk's Office, it is delivered to the Claims Section.  The Claim is then assigned to an adjuster who will conduct an investigation which includes a written response from the involved department.  The Claims Section will then evaluate and recommend a reasonable resolution of your Claim, which will be one of three alternatives

1. Pay a sum of money
2. Tender – transfer to another party or entity responsible for your alleged damage
3. Deny – where there is no evidence of any negligence by the City

If you have any questions, then do not hesitate to call the Claims Section at 206-684-8213.

CS 19.10  REV. 11/09

## THIS SPACE PROVIDED FOR ADDITIONAL INFORMATION
## Index to Exhibits

1. Description of occurrence and basis of liability (Continued from Page 1)

2. Additional persons involved in or witnesses to this incident (Continued from Page 1)

3. Health care providers pertaining to treatment related to this incident (Continued from Page 1)

4. Seattle Post Intelligencer Article of August 22, 2012, Updated dated October 19, 2012

5. United Press International (UPI) Article of August 23, 2012

6. Excerpts of Elizabeth Litalien Deposition

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

(Defamation Per Se)

# EXHIBIT 1

Description of Occurrence and Basis of Liability

(Continued from Page 1)

City of Seattle Claim for Damages Form

Claim of Mary Celeste Park

(Defamation Per Se)

# Exhibit 1

## Description of Occurrence and Basis of Liability

(Response to "What Happened" Section from Page 1 of August 18, 2014 Claim Form)

1. Mary Park files this claim for money damages against Detective Elizabeth Litalien, of the Seattle Police Department (SPD), for defamation per se.

2. A plaintiff must establish four essential elements for a defamation claim, all of which are present here: (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Bender v. Seattle*, 99 Wn.2d 582, 599, 664 P.2d 492 (1983).  Futhermore, the evidence support's claim that Litalien acted with actual malice, that is, knowledge of falsity or reckless disregard of the truth or falsity.

3. On January 21, 2014, Litalien was deposed in a civil defamation case Park filed against Judy and Lewis Townsend and Hermine and Emanuel Berner. Exhibit 6.  In her deposition, Litalien denied ever talking to the press about her investigation of Park.  Exhibit 6, pp. 127-128.  This appears to be false. Park has discovered at least two instances where Litalien published defamatory per se statements about Park to the press related to the accusations of theft and abuse that Litalien was actively investigating.

4. The instances Park has discovered so far where Litalien appears to have made statements to the press are defamatory per se. We believe we will discover additional defamatory statements that Litalien tried to conceal.

5. For purposes of this defamation claim, Park refers to the description of events and documents attached to the Claim she filed on August 15, 2014 against the City of Seattle, the Seattle Police Department and Litalien for violation of Mary Park's constitutional and common law rights arising out of a criminal investigation conducted by Litalien and the unlawful, reckless, malicious, search, seizure, arrest and prosecution of Park without probable cause by Litalien. The facts and documents in support of those claims are relevant to and support Park's claim of liability against Litalien for defamation per se.

6. As stated in Park's Claim dated August 15, 2012, Litalien unlawfully, recklessly and maliciously fabricated evidence, concealed exculpatory evidence, swore to false statements before prosecutors and the court and falsely claimed to them that probable cause existed that Park had committed theft.

1

7. The accusations of theft and abuse against Park were false and Litalien knew or maliciously and recklessly disregarded that fact when she spoke to the press. Under these circumstances, Litalien cannot hide behind her badge and claim immunity from this claim of defamation.
8. As a proximate result of the publication of defamatory per se statements by Litalien to the press, Park has suffered loss of her reputation, shame, mortification, hurt feelings and severe emotional distress.
9. The statements published by Litalien to the SeattlePI.com and the UPI, and perhaps there are many more that she has concealed, are defamatory per se in that they expose Park to hatred, contempt, ridicule, or obloquy so as to deprive Park of the benefit of public confidence or social intercourse, injures her in her business or profession, including but not limited to that of caregiver and falsely imputes to her criminal conduct involving moral turpitude.  Should this case go to trial and because Litalien committed defamation per se, the jury will be permitted to presume damages for loss of reputation without any necessity that Park prove actual monetary damages.
10. The damages suffered by Park as a proximate result of Litalian's defamation per se are in excess of $1,000,000.


Thank you for your consideration of this claim. If you require any additional information, please do not hesitate to contact Mary Park's legal counsel, as follows:


Mark J. Wilson
Attorney at Law
500 Union Street, Suite 502
Seattle, WA 98101
Telephone: (206) 567-9826
Fax: (206) 567-9827
e-mail: mjwilson@mjwilsonlawyer.com

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

# (Defamation Per Se)

# EXHIBIT 2

Additional Persons Involved in or Witnesses to this Incident (Continued from Page 1)

City of Seattle Claim for Damages Form

Claim of Mary Celeste Park

(Defamation Per Se)

# Exhibit 2

Additional Persons Involved in or Witnesses to This Incident

(Continued from Page 1)

Lieutenant Brett J. Rogers
Badge No. 6159
Seattle Police Department
(206) 625-5011

Detective Diane Stone
Seattle Police Department
(206) 625-5011

Donna Stangland
Detective
Seattle Police Department
(206) 625-05011

Sgt. Guy Pratt
Southwest Precinct
Seattle Police Department
(206) 625-05011

Eugene Foster
Detective, Badge #6289
Seattle Police Department
(206) 625-05011

Lt. Pierre Davis
Southwest Precinct
Seattle Police Department
(206) 625-05011

John Henry Browne
108 S. Washington St
Seattle, WA 98104
(206) 388-0777

Suzan R. Wilson
2331 46th Ave SW
Seattle, WA 98116
(206) 935-4744

Judy Townsend
3426 63rd Ave W.
Seattle, WA 98116
(206) 498-7220

Hermine Berner
4021 Beach Dr. SW #202
Seattle, WA 98116
(206) 937-7614

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

# (Defamation Per Se)

# EXHIBIT 3

Health Care Providers Pertaining to Treatment Related to this Incident (Continued from Page 1)

City of Seattle Claim for Damages Form

Claim of Mary Celeste Park
(Defamation Per Se)

# Exhibit 3

Health care providers pertaining to treatment related to this incident
(Continued from Page 1)

**Primary Care Physician:**

Dr. Alice Krehbiel
The Polyclinic
509 Olive Way #900
Seattle, WA 98101
(206) 860-4700

**Psychotherapist:**

Suzan R. Wilson, M.A., L.M.F.T., L.M.H.C.
2331 46th Ave SW
Seattle, WA 98116
206-935-4744

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

# (Defamation Per Se)

# EXHIBIT 4

Seattle Post Intelligencer Article of August 22, 2012, Updated dated October 19, 2012

City of Seattle Claim for Damages Form; Claim of Mary Celeste Park; **EXHIBIT 4**: Seattle Post Intelligencer Article of August 22, 2012 and Update, dated October 19, 2012; From url:
http://www.seattlepi.com/default/article/Charge-Caregiver-stole-50K-from-woman-91-3807910.php





EXHIBIT 4 - page 1 of 2



EXHIBIT 4 - page 2 of 2

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

# (Defamation Per Se)

# EXHIBIT 5

United Press International (UPI) Article of August 23, 2012

City of Seattle Claim for Damages Form; Claim of Mary Celeste Park; **EXHIBIT 5**: United Press International (UPI) Article of August 23, 2012; From url:

http://www.upi.com/Top_News/US/2012/08/23/Caregiver-accused-of-stealing-50K/UPI-



EXHIBIT 5

# City of Seattle Claim for Damages Form

# Claim of Mary Celeste Park

# (Defamation Per Se)

# EXHIBIT 6

Elizabeth Litalien Deposition – Excerpt of Transcript, Vl. 1)

Page 1

```
 1     IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
 2          IN AND FOR THE COUNTY OF KING
 3   _____
 4   MARY CELESTE PARK, an individual,    )
                                          )
 5         Plaintiff,              )
                                          )
 6   vs.                      ) Case No.
                              ) 13-2-14612-6 SEA
 7   JUDY TOWNSEND and LEWIS       )
     TOWNSEND, wife and husband and the   )
 8   marital community composed thereof,  )
     HERMINE BERNER and EMANUEL    )
 9   BERNER, wife and husband and the marital)
     community composed thereof,          )
10                                        )
           Defendants.          )
11
12
           VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION
13
                              OF
14
              ELIZABETH LITALIEN - VOLUME I
15
16
           Taken at 1411 Fourth Avenue, Suite 820
17
              Seattle, Washington
18
19
20
21
22
23
24   DATE TAKEN:  January 21, 2014
25   REPORTED BY:  KATHLEEN HAMILTON, RPR, CRR, CCR 1917
```

Page 2

```
 1              A P P E A R A N C E S
 2
     FOR THE PLAINTIFF:
 3
              MARK J. WILSON
 4            Law Office of Mark J. Wilson
              502 Logan Building
 5            500 Union Street
              Seattle, Washington 98101
 6            206.567.9826
              mjwilson@mjwilsonlawyer.com
 7
 8
     FOR THE DEFENDANT:
 9
              JOHN G. FRITTS
10            Wilson Smith Cochran &
              Dickerson
11            901 Fifth Avenue
              Suite 1700
12            Seattle, Washington 98164
              206.452.8981
13            fritts@wscd.com
14
     THE VIDEOGRAPHER:     LEO SANTIAGO
15
     ALSO PRESENT:       MARY PARK
16
17
18             *  *  *  *  *
19
20
21
22
23
24
25
```

Page 3

```
 1        DEPOSITION OF ELIZABETH LITALIEN
 2                EXAMINATION INDEX
 3   EXAMINATION BY                         PAGE
 4   Mr. Wilson  . . . . . . . . . . . . .    5
 5
                  EXHIBIT INDEX
 6
     EXHIBITS FOR IDENTIFICATION            PAGE
 7
       1    Subpoena to Testify at a Deposition by Videotape    5
 8        to Detective Elizabeth Litalien
 9    2   Protective Order                    28
10    3   Seattle Police Department Case Investigation    28
          Report *** CONFIDENTIAL ***
11
       4    Collection of photographs, 5 pages          51
12
       6    Seattle Police Department Statement Form dated    63
13        08/15/2012
14   11   Handwritten notes                   133
15   12   Typed document with the heading "H and B"   133
16   15   Subpoena Duces Tecum to Seattle Police       50
          Department
17
       16   Authorization to Disclose Protected Health    78
18        Information
19   17   Letter from IOD to Seattle Police Department    78
          dated 10/30/2012
20
21
22
23
24
25
```

Page 4

```
 1        SEATTLE, WASHINGTON; JANUARY 21, 2014
 2              10:11 A.M.
 3                -o0o-
 4
 5     THE VIDEOGRAPHER:  We are now recording and on the
 6   record.  My name is Leo V. Santiago.  I am the legal video
 7   specialist for LV Santiago Photography, LLC, located at 5705
 8   26th Avenue Northeast, Washington, 98105.
 9     Today is the 20th day of January, 2004, and the time
10   is 10:11.  This is the deposition of Detective Elizabeth
11   Litalien, number 2689, Seattle Police Department, in the matter
12   of Mary Celeste Park, plaintiff, versus Judy Townsend and Lewis
13   Townsend, husband -- wife and husband, defendants, in the
14   Superior Court for the State of Washington in and for King
15   County, Case Number 13-2-14612-6, Seattle.
16     This deposition is being taken by Buell Realtime
17   Reporting, LLC, 1411 Fourth Avenue, Suite 820, Seattle,
18   Washington.  The plaintiff has noted the deposition.  And the
19   court reporter is.
20     THE REPORTER:  Kathleen Hamilton.
21     THE VIDEOGRAPHER:  Kathleen Hamilton.  Counsels will
22   state their appearances, and the court reporter will now
23   administer the oath.
24     MR. WILSON:  Mark Wilson for plaintiff, Mary Celeste
25   Park.
```

```
                                                    Page 125                                                        Page 127
 1     never even said one word that she took the money.      1  interview with her, because our recorded interviews are almost
 2        "Litalien: After you accused her of taking the      2  always transcribed, and we like to keep them narrowed down as
 3     money, did she come back? Besides the groceries, did she  3  best as we can. We don't want to hand over a transcription
 4     come back to work?                                     4  that's an hour long.
 5        "No, she didn't. No."                               5       So I tend to go over with the complainant, with the
 6      And next page,                                        6  victim usually what happened, and then at a later time I go
 7        "Litalien: And do you think that's about the time   7  back and take an -- and do an interview when I can just narrow
 8     she -- what -- was the last day she worked here, is that  8  it down much more. And especially in Judy's case, she goes off
 9     the day she left you in the bathtub?                   9  on tangents.
10        "Berner: Yeah.                                     10     Q. Shouldn't you have done that before you had Mary
11        "Litalien: Had she ever done that before?          11  arrested?
12        "Berner: No. No, she -- she didn't."               12     A. I don't feel I needed to, no. I felt Judy was
13     So does that satisfy -- did that satisfy you at the   13  consistent in what she told me when I talked to her each time.
14  time that Hermine was telling you the truth about Mary's 14     Q. Did you understand the gravity of arresting Mary for
15  treatment of her?                                        15  this -- for this crime of abusing and stealing from her ward
16     A. No. Did it satisfy me? I would say that I already  16  when she's a caretaker? Did you know how serious that was?
17  knew she was experiencing, you know, what -- what was being 17     A. Yes.
18  described as PTSD. She was having flash -- alleged flashbacks. 18     Q. Do you know how much publicity that incident caused in
19  She was agitated.                                        19  this -- in this community?
20     So, no, I wouldn't say it satisfied me. I think there 20     A. No.
21  were problems when the camera would go on. When the camera 21     Q. Did you see any of the press reports?
22  went on, she totally, you know, trans -- I shouldn't say 22     A. No.
23  totally transformed, but she became -- using the word nervous, 23     Q. You didn't see CNN? You didn't see Q13? KOMO 4?
24  but it's more she -- I guess she became nervous and she was too 24     A. No.
25  focused on the fact that she was being videotaped.       25     Q. None of that?

                                                    Page 126                                                        Page 128
 1      She was much more relaxed when the videotape was off.  1     A. No.
 2  I was not satisfied with her interview. I mean, I think that  2     Q. Did you ever talk to the press?
 3  she was exhibiting signs of nervousness, confusion.       3     A. No.
 4     Q. You -- you took Judy's interview on videotape on    4     Q. Were you ever contacted by the press?
 5  September 20th, didn't you?                               5     A. I do not recall being contacted by the press.
 6     A. No. Judy? No.                                       6     Q. So af -- before you took -- I'm sorry. So you -- you
 7     Q. Judy?                                               7  sought and submitted an affidavit in support of a search
 8     A. Are you talking about audio? It's audio.            8  warrant, didn't you?
 9     Q. Audio.                                              9     A. Yes.
10     A. Recorded.                                         10     Q. Let me get that. Did you also request an arrest
11     Q. Oh, okay. I'm sorry. So you audio taped an interview 11  warrant?
12  with Judy on September 20th, which is after the criminal 12     A. No.
13  complaint -- well, your -- your Certification for Probable 13     Q. Why not?
14  Cause was filed with the court; correct?                 14     A. We don't do that.
15     A. Correct.                                           15     Q. What don't you do?
16     Q. Okay. That was in October. I'm sorry. That was --  16     A. An arrest warrant, I would have no reason to request
17  that was on August 17th. And so in September, a little more 17  an arrest warrant. I arrested her and placed her into jail. A
18  than a month later, you interviewed Judy on -- on audio tape. 18  warrant would be if she failed to, I guess -- well, if I -- if
19     Why -- why did you do that at that time?              19  I didn't know where she was and couldn't arrest her at the time
20     A. Because it's -- it's long and involved, and Judy can 20  that I wanted to arrest her, then I would request -- well,
21  go off on tangents and other things. My initial -- my    21  actually, I would just LODI (phonetic) the case with the
22  initial -- initially I just wanted to get the story down, what 22  prosecutor's office and they would put out a warrant out for
23  was being told, what was alleged to have happened. And that I 23  her arrest when she didn't show up at court. So I guess it
24  did with her over the phone.                             24  would be -- not be my way of operating.
25     But right off the bat, I didn't take a recorded       25     Q. Well, not your way of operating, but why did you
```